UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHRISTOPHER BROWN,

                                        Petitioner,

                                                                    DECISION & ORDER

v.

                                                                    Case No. 13-CV-6456-FPG

UNITED STATES PAROLE COMMISSION,

                                        Respondent.

---

## I.    INTRODUCTION

Before the Court for determination is a Petition for a Writ of Mandamus filed by *pro se* Petitioner Christopher Brown ("Petitioner"), who, at the time of this filing, was being held in custody at the Niagara County Jail, 5526 Niagara Street Extension, Lockport, New York.[1] Respondent has opposed the Petition.  For the reasons set forth herein below, the Petition is denied.

## II.    BACKGROUND

The Petition is sparse, but the factual circumstances leading up to the commencement of this action are sufficiently detailed in exhibits[2] attached to Respondent's Answer & Return (Exs. 1-11, ECF No. 5), and in Respondent's Statement of Facts (Resp't Mem. 1-4, ECF No. 6).  These factual circumstances are summarized as follows.  Petitioner was sentenced by the District of Columbia Superior Court on January 4, 2005 to eight years of imprisonment, followed by three years of supervised release, for carjacking, and began service of the supervised release term on

---

[1] The most recent correspondence received by the Court from Petitioner indicates that he is being held in custody at the Northeast Ohio Correctional Center, 2240 Hubbard Road, Youngstown, Ohio 44505.

[2] All exhibits were certified true copies of the documents contained the parole of Petitioner. Ex. 0, ECF No. 5-2.

February 11, 2011.  Ex. 1, ECF No. 5-2.  On July 12, 2012, the U.S. Parole Commission[3]

("Commission") issued a warrant charging Petitioner with violating the conditions of

supervision.  Ex. 2, ECF No. 5-2.  Following revocation proceedings, the Commission revoked

Petitioner's term of supervised release, and ordered him to serve a new term of imprisonment of

14 months, to be followed by 22 months of supervised release.  Ex. 3, ECF No. 5-2.  Petitioner

was released to the 22-month supervised release term on August 2, 2013, to remain under

supervision until September 28, 2013.  Ex. 4, ECF No. 5-2.  The Certificate of Supervised

Release signed by Petitioner stated that he was subject to 22 months of supervision from his

release from imprisonment and that he was to remain within the limits of the Washington, D.C.

metropolitan area, the boundaries of which were specified on the face of the Certificate of

Supervised Release.  *Id.*

On August 11, 2013, Petitioner was detained at the Peace Bridge by Canadian border

officers, after an apparent attempt to enter Canada.  Ex. 5, ECF No. 5-2.  On August 12, 2013,

the Commission issued a Warrant Application charging Petitioner with violating the conditions

of supervision by leaving the district of supervision without permission and failing to report to

his supervising officer as directed.  Ex. 6, ECF No. 5-2.  Acting on the Commission's

instructions to assume custody of Petitioner as soon as possible (Ex. 7, ECF No. 5-2), the United

---

[3] According to Respondent (Resp't Mem. 2, n.2), the U.S. Parole Commission has jurisdiction over D.C. Code supervised releasees pursuant to D.C. Code § 24-133(c)(2), which provides:

> The [Court Services and Offender Supervision] Agency shall supervise any offender who is released from imprisonment for any term of supervised release imposed by the Superior Court of the District of Columbia.  Such offender shall be subject to the authority of the United States Parole Commission until completion of the term of supervised release.  The United States Parole Commission shall have and exercise the same authority as is vested in the United States district courts by paragraphs (d) through (i) of § 3583 of title 18, United States Code . . . ."

D.C. Code § 24-133(c)(2) (emphasis added).

States Marshals Service took Petitioner into custody on August 12, 2013 and transported him to the Niagara County Jail in Lockport, New York.  Ex. 8, ECF No. 5-2.

On August 13, 2013, the Commission requested the United States Probation Office for the Western District of New York to conduct a Preliminary Interview for Petitioner.  Ex. 9, ECF No. 5-2.  The summary report of the Preliminary Interview reflects that on August 19, 2013, a United States Probation Officer interviewed Petitioner, and Petitioner refused to acknowledge the charges or to sign the Preliminary Interview Form, indicating that he wished to postpone his Preliminary Interview.  Ex. 10, ECF No. 5-2.  Petitioner, however, executed two CJA-22 forms requesting that counsel be appointed. *Id.*

On August 20, 2013, counsel was assigned from the Federal Public Defender's Office. Counsel met with Petitioner and scheduled the Preliminary Interview for September 6, 2013. *Id.* At the Preliminary Interview conducted on that date, Petitioner denied both charges against him and requested a local revocation hearing. *Id.* On September 30, 2013, the Commission informed Petitioner that it had found probable cause to believe that he had violated the conditions of supervision as charged and had ordered a local revocation hearing.  Ex. 11, ECF No. 5-2.

## III.   PROCEEDURAL HISTORY

Initially, Petitioner filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on August 27, 2013, alleging that he was being "unlawfully detained and restrained of his liberty" by Respondent and held on a federal parole violation warrant at the Niagara County Jail located in Lockport, New York.  ECF No. 1.  Specifically, Petitioner alleged that (1) he was "treated hostile," "detained unlawfully and kidnapped," "after properly identifying himself as a Free-Man, Sovereign Moorish American with Diplomat status under Apostill Declaration and Certificate of Sovereign Status and Sovereign Oath of Renunciation, (sui juris)"; (2) "CHRISTOPHER BROWN by the way of Certificate of Live Birth was and still is being

'trespassed against' without written permission of [his] Authorized Representative Christopher: Brown-Bey which both parties are governed by Uniform Commercial Code 1-104, 10-104"[4]; and (3) this detention was unlawful due to Respondent's failure to hold a timely probable cause hearing pursuant to 28 C.F.R. § 2.101(a), following his arrest on August 12, 2013, thereby entitling him to release. *Id.* ¶¶ 1-6.

Thereafter, by Decision & Order dated September 11, 2013, United State District Judge John T. Curtin, upon review of the Petition, and relying on *Heath v. U.S. Parole Comm'n*, 788 F.2d 85, 89-90 (2d Cir. 1986) and *Powell v. U.S. Parole Comm'n*, No. 05-CV-782S, 2007 WL 2283990, at *3 (W.D.N.Y. Aug. 6, 2007), reclassified "the action from a habeas petition to a mandamus petition." ECF No. 2. Judge Curtin directed Respondent, no later than October 4, 2013, to file and serve a response to this Order as to why the Court should not grant the petition for a writ of mandamus, and also to file and serve a memorandum of law addressing each of the issues raised in the petition, including citations of relevant supporting authority. *Id.* Additionally, the Court granted Petitioner the opportunity to file a written response within 60 days of receipt of Respondent's answer and memorandum of law. *Id.*

On October 2, 2013, this Court issued an Order (ECF No. 4), granting Respondent's Motion for Stay of Proceedings until 30 days after the Department of Justice Employees are Permitted to Resume Civil Litigative Functions ("Motion to Stay") (ECF No. 3). On October 10, 2013, the Court received from Petitioner a letter expressing his opposition to the granting of Respondent's application for a stay and requesting his immediate release from custody and

---

[4] Petitioner further stated in paragraphs 3 and 4, respectively, the following:

"UCC financing Stateman has been filed with the Regional Secretary of State, UCC Division in the State of Kentucky claiming all property, presentments and records of DEBTOR CHRISTOPHER BROWN making Christopher: Brown-Bey sole owner and Holder-in-Due-Course and beneficiary of CHRISTOPHER BROWN 'TRUST.'"

Furthermore, NO PROOF OF CLAIM has been provided by any parties in regards to CHRISTOPHER BROWN. Also a Notarize Security Statement, Hold-Harmless Indemnity Agreement and Power of Attorney exist between the two (2) parties CHRISTOPHER BROWN and Christopher: Brown-Bey.

extinguishment of the remainder of the supervised release term and/or immediate release from custody until a date is set for a hearing.[5]  On October 25, 2013, Respondent filed its Answer and Return ("Answer & Return") (ECF Nos. 5, 5-1), with attached Exhibits 0-11 (ECF No. 5-2), and an accompanying Memorandum of Law ("Resp't Mem.") (ECF No. 6), therein, opposing the Petition on the ground that the continued detention was in accordance with the law.  Respondent also submitted proof of service of those documents on Petitioner.  ECF No. 5-3.

On October 10, 2013, the Court received from Petitioner written notification that he was now in custody in a Northern Ohio prison, as well as a notarized five-page document styled in three parts, a "Cover Letter," "Commercial Hasbeas Corpus," and "Memorandum."  Therein he requested immediate release from custody and the remainder of supervised release due to the Respondent's default in responding in a timely manner to the Order of Judge Curtin and the lack of jurisdiction of the Commission[6] over Petitioner, "Nunc Pro Tunc to May 12, 1969," ostensibly because of his status as a "Moorish American (Sovereign), National and Secured Party/Creditor" who has a "Notarized Security Agreement, Hold-harmless and Indemnity Agreement and Power of Attorney for DEBTOR CHRISTOPHER BROWN," and holds an "Apostill, Declaration of Certificate of Sovereign Status, Apostill, Formal Sovereign Oath of Renunciation, Apostill, Affidavit of Proclamation of Nationality and Free National Name."  ECF No. 10.

Thereafter, on November 4, 2013, the Court received a letter from Petitioner stating that it was written in response to the Respondent's Memorandum of Law, but now alleging the failure of the Commission to provide him a "revocation hearing" since August 12, 2013, the date he signed the unlawful warrant."  He also stated the intention of "Christopher: Brown (attorney-in-fact for CHRISTOPHER BROWN, Ens Legis Trust, RE; Property, certificate of live birth

---

[5] Petitioner also therein notified the Court that he was no longer held at the Niagara County Jail in Lockport, New York, but was in custody at 2240 Hubbard Road, Youngstown, Ohio 44505.  Previous correspondence received from Petitioner on November 4, 2013 also reflected the same return address in Ohio.
[6] Petitioner identified the Commission as "a agent of the United States America Corporation which was corporated in England."

document No 132-69-035312 State of North Carolina," to have a revocation hearing, provided

the Commission give "CHRISTOPHER BROWN a revocation hearing date and location by Nov.

15, 2013," and "CHRISTOPHER BROWN will no longer pursue an appeal nor compensation."[7]

By Notice of Appeal filed on October 28, 2013 (ECF No. 7), Petitioner appealed to the

United States Court of Appeals, Second Circuit, both the Decision & Order reclassifying the

habeas corpus petition and the Order granting the Motion to Stay.  The appeal was denied by

Mandate of the Second Circuit issued on January 13, 2014.  ECF No. 9.

## IV.   DISCUSSION

### A.  Legal Standard Applicable to a Writ of Mandamus

Pursuant to 28 U.S.C. § 1651(a), "The Supreme Court and all courts established by Act

of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions

and agreeable to the usages and principles of law."  Mandamus is a "drastic and extraordinary

remedy reserved for really extraordinary circumstances."  *Cheney v. U.S. District Court for the*

*District of Columbia*, 542 U.S. 367, 380 (2004) (quoting *Ex parte Fahey*, 332 U.S. 258, 259-60

(1947).  Noting that "the writ is one of the most potent weapons in the judicial arsenal," *id.*

(quoting *Will v. United States*, 389 U.S. 90, 107 (1967)), the Supreme Court has recognized three

conditions which must be met before it may issue.  *Id.* (citing *Kerr v. United States Dist. Court*

*for the Northern Dist. of Cal.*, 426 U.S. 394, 403 (1976).

> First, the party seeking issuance of the writ [must] have no other adequate means
> to attain the relief he desires, —a condition designed to ensure that the writ will
> not be used as substitute for the regular appeals process.  Second, the petitioner
> must satisfy the burden of showing that [his] right to issuance of the writ is clear
> and indisputable.  Third, even if the first two prerequisites have been met, the
> issuing court, in the exercise of its discretion, must be satisfied that the writ is

---

[7] The instant Petition for Mandamus is based upon allegations regarding the failure of the Commission to provide a timely probable cause hearing for Petitioner as a supervised releasee.  While it is unclear that Petitioner now also seeks to protest the timeliness of the local revocation hearing, as well, in this decision, the Court has addressed only the allegations set forth in the Mandamus Petition.

appropriate under the circumstances.   (Internal citations and quotation marks omitted).

*Id.* at 381.  "These hurdles, however demanding, are not insuperable." *Id.*

## B.  Analysis

The Court agrees with Respondent that no basis for mandamus compelling a probable cause hearing exists in this case.  Petitioner has failed to satisfy any of the prerequisites for the relief he seeks or for the exercise of this Court's discretion.

First, contrary to Petitioner's allegations and stated belief, a timely probable cause hearing was in fact held; he was present and assisted by counsel.  Judging by the untimeliness allegations, Petitioner has labored under the mistaken belief that Respondent failed to conduct a probable cause hearing within the five-day timeframe set out in 28 C.F.R. § 2.101(a) (Probable Cause Hearing and Determination), which provides that "A parolee who is retaken and held in custody in the District of Columbia on a warrant issued by the Commission, ... shall be given a probable cause hearing by an examiner of the Commission no later than five days from the date of such retaking."   Similarly, 28 C.F.R. § 2.214 (Probable Cause Hearing and Determination) provides that "A supervised releasee who is retaken and held in the District of Columbia on a warrant issued by the Commission, ... shall be given a probable cause hearing by an examiner of the Commission by no later than five days from the date of such retaking."

However, Petitioner was a supervised releasee who was retaken and held in custody in Lockport, New York, outside the District of Columbia, on a warrant issued by the Commission, and as Respondent aptly points out, pursuant to Rule 2.214-04 (Releasee Arrested and Held Outside the Washington D.C. Metropolitan Area) of the Commission's Rules and Procedures Manual ("Manual"),

> In the case of a releasee arrested on a violator warrant outside the District of Columbia metropolitan area, a U.S. Probation Officer will conduct a preliminary

> interview and the probable cause decision will be made in accordance with § 2.48. If probable cause is found and the Commission determines that a local revocation hearing should be held outside the D.C. metropolitan area, the local revocation hearing will be conducted in accordance with the procedures specified at § 2.49.

U.S. Parole Commission Rules and Procedures Manual, 28 C.F.R. ¶ 2.214-04. Thus, the Manual provides that 28 C.F.R. § 2.48 (Revocation: Preliminary interview) applied in Petitioner's circumstances. Pursuant to § 2.48(a), which prescribes the requirements for and governs the conduct of the preliminary interview:

> A parolee who is retaken on a warrant issued by the Commission shall be given a preliminary interview by an official designated by the Regional Commissioner to enable the Commission to determine if there is probable cause to believe that the parolee has violated his parole as charged, and if so, whether a revocation hearing should be conducted. The official designated to conduct the preliminary interview may be a U.S. Probation Officer in the district where the prisoner is confined, provided he is not the officer who recommended that the warrant be issued.

As can be readily seen upon a fair reading of this regulation, unlike in § 2.101(a), no timeframe for conducting the preliminary interview is included in the language of § 2.48(a).

Pursuant to § 2.48(d), at the conclusion of the Preliminary Interview, "the interviewing officer shall inform the parolee of his recommended decision as to whether there is probable cause to believe that the parolee has violated the conditions of his release, and shall submit to the Commission a digest of the interview together with his recommended decision." According to Respondent, the Preliminary Interview conducted by the Probation Officer was the functional equivalent of the probable cause hearing (*see* Preliminary Interview and Revocation Hearing Form: "The purpose of the preliminary interview is to assist the Parole Commission in deciding whether there is probable cause to believe that you violated a release condition.") (Ex. 10, ECF No. 5-2).

The Preliminary Interview was held in accordance with the requirements of the regulations, and the Commission notified Petitioner on September 30, 2013 of its decision

finding probable cause, the scheduling of a local revocation hearing, and that a disclosure packet containing documents pertinent to the local revocation hearing was provided to his attorney. Ex. 11, ECF No. 5-2. Furthermore, Respondent has cited settled law that probable cause for leaving the district without permission is established, as a matter of law, whenever a supervised releasee is arrested outside the district of his supervision. *See, e.g., Stidham v. Wyrick*, 567 F.2d 836 (8th Cir. 1977); *Chilembwe v. Wyrick*, 574 F.2d 985 (8th Cir. 1978).

Regarding timeliness of the Preliminary Interview, in *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972), the Supreme Court established that parolees retain a liberty interest in their freedom, and that "minimal due process requirements require a preliminary inquiry in the nature of a preliminary hearing to determine probable cause, to be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest." The *Morrissey* Court did not define the parameters of "promptly," but found that a lapse of two months not to be unreasonable. *Id.* at 488. Here, less than 30 days elapsed between the detention of Petitioner by the Canadian border patrol on August 11, 2013 and the September 6, 2013 Preliminary Interview at which Petitioner appeared and was represented by counsel. This timeframe was reasonable and comported with due process requirements, thereby, resulting in no prejudice to Petitioner.

Just a few words about Petitioner's claims that the Commission lacked jurisdiction because of his status as a properly identified "Free-man, Sovereign Moorish American with Diplomat status under Apostill Declaration and Certificate of Sovereign Status and Sovereign Oath of Renunciation, (sui Juris)," and that as such, he was "treated hostile," "detained unlawfully," "kidnapped," and "trespassed against." To begin with, Petitioner's allegations in

this regard appear to stem from beliefs associated with "Moorish Science."[8]   Such beliefs, however convicted and sincerely held they may be, are insufficient to obtain the relief he seeks, *i.e.*, release from custody and supervised release.   The Commission clearly possessed statutory authority and jurisdiction over Petitioner as a supervised releasee, and Petitioner's conclusory allegations of hostile treatment, unlawful detention, kidnapping, and trespass, based on his status as a Sovereign Moorish American, are wholly insufficient to establish otherwise.

There is no further remedy to be obtained by mandamus.   Where the probable cause hearing that he seeks to have this Court compel the conduct of has already been held, and Petitioner has been notified by the Commission that probable cause existed for his arrest, Petitioner has failed to meet his burden of showing that his right to the writ is clear and indisputable.   No reasonable basis exists for the exercise of this Court's discretion, and the Petition must be dismissed.

## V.   CONCLUSION

For the reasons set forth herein above, the Petition for Mandamus is hereby dismissed, and the Clerk of the Court is directed to close Case No. 13-CV-6456.

IT IS SO ORDERED.

Dated: October 30, 2014
      Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge

---

[8] For a thorough discussion and exposition of the tenets associated with "Moorish Science," see *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201 (D. Conn. 2010).